**SO ORDERED.**

**SIGNED this 23 day of August, 2013.**

_____
**Stephani W. Humrickhouse
United States Bankruptcy Judge**

_____

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NORTH CAROLINA
RALEIGH DIVISION

IN RE:

BETTY SUZANNE HUBBELL,                    CASE NO. 12–04310–8–SWH
                                          CHAPTER 13
    DEBTOR.

## ORDER

This matter came before the court on the objection of RBS Citizens, N.A., successor–in–interest to CCO Mortgage Corporation f/k/a American Home Funding, Inc. (collectively "RBS Citizens") to John F. Logan's ("trustee") motion for confirmation of Betty Suzanne Hubbell's ("debtor") chapter 13 plan of reorganization. A hearing was held on July 17, 2013, in Raleigh, North Carolina.

At the conclusion of the hearing, the court took the matter under advisement and afforded the parties the opportunity to file post–hearing memoranda of law outlining their respective positions. The court also indicated that it would first determine whether the interest rate on RBS Citizens' claim could be modified pursuant to § 1322(c)(2) of the Bankruptcy Code.[1] In the event

___

[1] Hereinafter and unless indicated otherwise, all statutory references are to the Bankruptcy Code, 11 U.S.C. §§ 101, et seq.

that the interest rate was subject to modification under 1322(c)(2), the court would address and select the appropriate interest rate at a subsequent proceeding.[2]

## BACKGROUND

On July 25, 1986, Phillip Flores and his wife, Sue Flores, executed a promissory note in favor of RIHT Mortgage Corporation ("RIHT Mortgage") in the original principal amount of $57,609 with interest accruing at 9.5% per annum ("promissory note"). By its terms, the promissory note became due and payable in full on August 1, 2016. The promissory note contained an acceleration clause, which provided as follows:

> If default be made in the payment of any installment . . . and if the default is not made good prior to the due date of the next such installment, the entire principal sum and accrued interest shall at once become due and payable without notice at the option of the holder . . . . Failure to exercise this option shall not constitute a waiver of the right to exercise the same in the event of any subsequent default.

To secure repayment of the promissory note and ensure their performance of all the obligations thereunder, Mr. and Mrs. Flores executed a deed of trust encumbering real property located at 141 Carriage House Trail, Garner, North Carolina and more particularly described as "all of Lot 23, Georgetown Manor according to map entitled 'Property of Georgetown Manor, Phase III, Section D,' recorded in Book of Maps 1985, Page 1037, Wake County Registry." ("real property").

---

[2] RBS Citizens did not contest the interest rate set forth in the proposed plan, opting to oppose only the ability to modify that rate. On the other hand, the debtor did contest the interest rate at the hearing, but and after the hearing, debtor's counsel notified the court, the trustee, and counsel for RBS Citizens by email that he did not intend to object to the proposed interest rate of 5.25%. He proffered that the difference between an interest rate of 5.25% and the rate originally proposed by the debtor (3.75%) would only result in an $8.00 per month increase in her monthly plan payments. Because there is no longer a dispute over the interest rate, a subsequent proceeding to determine the appropriate interest rate is not necessary.

On April 12, 1990, the debtor acquired the real property subject to the promissory note and deed of trust. The promissory note, deed of trust and all rights thereunder were assigned to RBS Citizens' predecessor–in–interest, American Home Funding, Inc., on January 31, 1991.

The debtor filed a voluntary petition seeking relief under chapter 13 of the Bankruptcy Code on June 8, 2012. RBS Citizens filed a proof of claim,[3] which was subsequently amended on August 2, 2013, in the amount of $12,805.54 and consisted of outstanding principal and interest of $11,447.54, an escrow advance of $1,332.78, and accumulated late fees of $25.22. The claim is evidenced by the promissory note and is fully secured by the deed of trust.[4] Although the date of the final payment due under the promissory note was August 1, 2016, the promissory note was accelerated and became fully due and payable on May 1, 2012, approximately one month prior to commencement of the debtor's case.

The debtor's proposed chapter 13 plan, as modified by the trustee in his motion for confirmation (hereinafter "proposed plan"), provides for the payment of $800 per month for five months, followed by monthly payments of $810 for fifty–three months "or until all unsecured creditors have received an amount sufficient to satisfy the requirements of § 1325(a)(4) or § 1325(b)(1)(B)[,] whichever is greater." The proposed plan treats RBS Citizens' claim as fully secured by the real property and proposes to pay it in full over fifty–eight months with interest accruing at 5.25% per annum. As a result, the estimated monthly payment with respect to RBS Citizens' claim is $226.02.

---

[3] The initial proof of claim, filed on September 5, 2012, was in the amount of $11,555.72 and included prepetition arrearages totaling $1,286.18.

[4] Schedule A, which was filed along with the debtor's voluntary petition, lists the fair market value of the residence as $85,000.

RBS Citizens filed the objection currently before the court on December 5, 2012, asserting that the proposed plan cannot be confirmed because it violates § 1322(b)(2) of the Bankruptcy Code by modifying the interest rate on its claim. In support of this assertion, RBS Citizens relies on Witt v. United Companies Lending Corp. (In re Witt), 113 F.3d 508 (4th Cir. 1997). In Witt, the Fourth Circuit held that § 1322(c)(2) did not effectively overrule Nobelman v. American Savings Bank, 508 U.S. 324 (1993), and does not permit bifurcation of an undersecured claim, which is secured by a lien on a debtor's principal residence, into secured and unsecured portions. Witt, 113 F.3d at 513–14.

The debtor and the trustee contend that § 1322(c)(2), when read in conjunction with §1325(a)(5), permits modification of the payment terms of RBS Citizens' claim, including the interest rate. Relying on In re Joyner, No. 08–05647, 2008 WL 4346467 (Bankr. E.D.N.C. Sept. 17, 2008), In re Crickmore, 07–01350–5–ATS (Bankr. E.D.N.C. Aug. 29, 2007) (unpublished) (hereinafter "Crickmore I"), and In re Crickmore, 07–01350–5–ATS (Bankr. E.D.N.C. Dec. 6, 2007) (unpublished) (hereinafter "Crickmore II"), they argue that § 1322(c)(2) permits modification of the payment terms of the promissory note and deed of trust while allowing the debtor to retain the real property and pay the mortgage claim over the term of her plan at a lower interest rate. Both the debtor and the trustee take this position despite acknowledging that bifurcation of RBS Citizens' claim into secured and unsecured components is prohibited by § 1322(b)(2).

## DISCUSSION

The issue before the court is whether § 1322(c)(2), which was added by the Bankruptcy Reform Act of 1994, permits modification of the interest rate accruing on a claim secured by a lien on real property serving as a debtor's principal residence.

4

Section 1322(b)(2), coined the "anti–modification" provision, provides that a "plan may . . . modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence . . . ." 11 U.S.C. § 1322(b)(2). This provision, "allows modification of the rights of both secured and unsecured creditors, subject to special protection for creditors whose claims are secured only by a lien on the debtor's home." Nobelman, 508 U.S. at 327 (holding that § 1322(b)(2) prohibits debtors from utilizing § 506 to modify or "strip down" an undersecured creditor's lien into secured and unsecured components where the collateral serving as security is the debtor's principal residence); TD Bank, N.A. v. Davis (In re Davis), 716 F.3d 331, 335 (4th Cir. 2013) (emphasizing "that section 506(a), which classifies valueless liens as unsecured claims, operates with section 1322(b)(2) to permit a bankruptcy court . . . to strip off a lien against a primary residence with no value."); 1st 2nd Mortg. Co. of NJ, Inc. v. Ferandos (In re Ferandos), 402 F.3d 147, 151 (3d Cir. 2005) ("[T]he true . . . intent behind the § 1322(b)(2) exception . . . is to protect the traditional mortgage lender who provides long–term financing that enables individuals to purchase their home." (citation omitted)). Modifications prohibited by § 1322(b)(2) include "any fundamental alteration in a debtor's obligations, e.g., lowering monthly payments, converting a variable interest rate to a fixed interest rate, or extending the repayment term of a note." Litton v. Wachovia Bank (In re Litton), 330 F.3d 636, 643–44 (4th Cir. 2003)).[5] Absent an exception, § 1322(b)(2) prohibits any modification that alters the

---

[5] The "rights" that are protected from modification by § 1322(b)(2) are "those . . . bargained for by the mortgagor and the mortgagee." Home Funds Direct v. Monroy (In re Monroy), 650 F.3d 1300, 1301 (9th Cir. 2010); see, e.g., Butner v. United States, 440 U.S. 48, 54–55 (1979); Nobelman, 508 U.S. at 329 (indicating that a secured creditor's rights "are reflected in the relevant mortgage instruments, which . . . . include the right to repayment of the principal in monthly installments over a fixed term at specified adjustable rates of interest, the right to retain the lien until the debt is paid off, the right to accelerate the loan upon default and to proceed against petitioners' residence by

5

nature, rate of interest or maturity date of a claim secured only by a security interest on real property serving as the debtor's principal residence. See, e.g., id. at 644; In re Coffey, 52 B.R. 54, 55 (Bankr. N.H. 1985) (sustaining a creditor's objection to confirmation of a plan, which proposed converting a demand note with a variable interest rate into a thirty–year loan with a fixed interest rate, where the creditor was secured only by real property serving as the debtors' principal residence).

Section 1322(c)(2), however, carves out a rare exception to the anti–modification provision by stating that "the plan may provide for the payment of the claim as modified pursuant to section 1325(a)(5)" where "the last payment on the original payment schedule for a claim secured only by a security interest in real property that is the debtor's principal residence is due before the date on which the final payment under the plan is due . . . ." 11 U.S.C. § 1322(c)(2); In re Young, 199 B.R. 643, 647 (Bankr. E.D. Tenn. 1996) (concluding "that subsection (c)(2) [of § 1322] provides an exception to the general prohibition on home mortgage modifications where the last payment happens to fall due during the life of the plan."). Section 1322(c)(2), therefore, "clarifies the debtor's rights with respect to claims secured by the debtor's principal residence and *overrides, to some extent, limitations on plan provisions that modify the rights of holders of such claims.*" 8 Collier on Bankruptcy ¶¶ 1322.01, 1322.06[1] (Alan N. Resnick & Henry J. Sommer eds., 16th ed.) (emphasis added); KEITH M. LUNDIN, CHAPTER 13 BANKRUPTCY, 3D ED. § 143.1 (2000 & Supp. 2004). Observing its purpose and legislative history, this subsection applies to "not only short–term

---

foreclosure and public sale, and the right to bring an action to recover any deficiency remaining after foreclosure . . . . These are the rights that were 'bargained for by the mortgagor and the mortgagee,' Dewsnup v. Timm, 502 U.S. 410, 417, 112 S. Ct. 773, 116 L. Ed. 2d 903 (1992), and are rights protected from modification by § 1322(b)(2)." (internal citations omitted)).

home mortgages (less than five years) and balloon payments, but also the traditional long–term mortgages . . . which have less than five years remaining under the terms of the loan." Young, 199 B.R. at 653; In re McNeill, No. 05–82077, 2006 WL 1314333, at *3 (Bankr. M.D.N.C. May 12, 2006) (recognizing that "many courts interpreting § 1322(c)(2) have concluded that a mortgage that matures or balloons before the petition date can be paid in full through a Chapter 13 plan." (citations omitted)).

> Congress obviously believed that debtors with such mortgages needed additional protection. Short–term and balloon payment mortgages often have high rates or terms that are particularly unfavorable, which Congress has deemed deserving of close scrutiny. And debtors nearing the end of a long–term mortgage often have large amounts of equity that could be lost in a foreclosure.

8 Collier on Bankruptcy ¶ 1322.17 (internal footnote and citations omitted).

A claim secured by a debtor's principal residence may be modified under the provisions of § 1322(c)(2), only if the proposed modification complies with § 1325(a)(5). See, e.g., 11 U.S.C. § 1322(c)(2); Crickmore I, No. 07–01350–5–ATS, at 2. Section 1325(a)(5) requires that each allowed secured claimant, absent their acceptance of the plan or the debtor's surrender of the collateral, retain the lien securing their claim and receive distributions whose "value, as of the effective date of the plan, . . . is not less than the allowed amount of such claim." 11 U.S.C. § 1325(a)(5)(B); see, e.g., Witt, 113 F.3d at 511 n.2 ("Under § 1325(a)(5), a Chapter 13 bankruptcy plan can only be approved if it meets one of three conditions with respect to each "allowed secured claim": (A) the holder of the claim has accepted the plan; (B) the holder both retains its lien and receives property worth at least the allowed amount of the claim; or (C) the holder is given the property securing the claim."); In re Ibarra, 235 B.R. 204, 212 (Bankr. D.P.R. 1999) (emphasizing that the purpose of § 1325(a)(5) "is to protect the creditor's interest, and place the creditor in as good

7

a position as if the debtors had surrendered the property."). Where these distributions are in the form of periodic payments, the payments "shall be in equal monthly amounts." 11 U.S.C. § 1325(a)(5)(B)(iii)(I); In re Correale–Darling, 07–14395, 2008 WL 4057141, at *5 n.27 (Bankr. D. Mass. Aug. 25, 2008).

Provided that § 1325(a)(5) is satisfied, courts have consistently permitted claims subject to modification under §1322(c)(2) to be restructured "at an interest rate more favorable to the debtor than the rate on the original note." Joyner, 2008 WL 4346467, at *2; see, e.g., In re Keita, No. 12–19970, 2012 WL 6195109, at *3–4 (Bankr. D. Md. Dec. 12, 2012); In re Evans, No. 10–35438, 2011 Bankr. LEXIS 1724, at *2 (Bankr. S.D. Tex. May 9, 2011) (holding that "[b]ecause the last payment on the mortgage loan is due, under the contract terms, before the final payment under the plan, [the debtor] may modify the interest rate on the loan pursuant to 1325(a)(5)." (citations omitted)); In re Golash, 428 B.R. 189, 191 (Bankr. W.D. Penn. 2010); In re Gray, No. 07–07380, 2008 WL 5068849, at *3 (Bankr. D.P.R. Nov. 25, 2008); Crickmore II, No. 07–01350–5–ATS, at 3; In re Terrell, No. 99–70556–JTL (Bankr. M.D. Ga. Aug. 20, 1999) (unpublished) (holding that the market interest rate is appropriate on home mortgage claims modified pursuant to § 1322(c)(2) and subject to cram down under §1325(a)(5)); Ibarra, 235 B.R. at 212–13; In re Bagne, 219 B.R. 272, 277 (Bankr. E.D. Cal. 1998) (holding that § 1322(c)(2) permits modification of the interest rate on a home equity loan "by use of § 1325(a)(5) in a situation where the final payment on the loan would fall due before the end of the debtor's plan term."). These courts have recognized that "vary[ing] the contractual rate of interest, in favor of a 'discount rate'" is a permissible modification of a secured claim under § 1322(c)(2) and § 1325(a)(5). Gray, 2008 WL 5068849, at *3 (holding that 1325(a)(5)(B) requires the interest rate be placed at an

appropriate discount rate that will yield, over the course of the extended payment period, the present value of the allowed secured claim as of the effective date of the plan).

Courts in this district have addressed and concluded that the Bankruptcy Code permits modification of the interest rate on claims secured by a debtor's principal residence in Joyner, Crickmore I, and Crickmore II.  The court in Joyner, addressing whether to impose the automatic stay as to a secured creditor under § 362(c)(4)(D), opined that the claim, which was fully secured by a deed of trust on the debtor's principal residence and called for a final balloon payment almost two years prior to the date that the final chapter 13 plan payment was due, could be modified under § 1322(c)(2).  2008 WL 4346467, at *2.[6]  The court concluded that "the debtor's case present[ed] a rare situation in which the exception under 1322(c)(2) applies[]" permitting modification of the underlying debt "at an interest rate more favorable to the debtor than the rate on the original note." Id.

The modifications proposed by the debtors in Crickmore I and Crickmore II included reducing the interest rate, lowering the monthly payment amount, extending its term and imposing a final balloon payment prior to completion of the plan. Crickmore I, No. 07–01350–5–ATS, at 1. The secured claimant, Wells Fargo Financial North Carolina 1, Inc. ("Wells Fargo"), objected to confirmation of the debtors' chapter 13 plan, arguing that these proposed modifications were prohibited by 1325(a)(5). Id. at 1–2.  In Crickmore I, the court sustained Wells Fargo's objection and, after setting forth the requirements for confirmation, afforded the debtors ten days to amend

---

[6] The parties in Joyner stipulated that the amount of the secured creditor's claim was $54,323 and the value of the debtor's residence was $64,816. 2008 WL 4346467, at *1. Based on these stipulations, the court found that secured creditor's interest in the debtor's residence was fully secured and protected by a $10,493 equity cushion. Id.

9

their plan to comply with § 1325(a)(5)(B). Id. at 2–4. Although it sustained the objection, the court observed the following:

> While § 1322(b)(2) of the Bankruptcy Code prohibits bifurcation of Wells Fargo's claim, other modifications of the claim (such as extension of payment terms) are permissible in this case under § 1322(c)(2). Since the last payment on the mortgage loan becomes due prior to the end of the debtors' chapter 13 plan, the debtors may modify Wells Fargo's claim in accordance with the requirements of § 1325(a)(5).

Crickmore I, No. 07–10350–5–ATS, at 2 (citation omitted). Following submission of the debtors' amended plan and in accordance with Crickmore I, the court considered the appropriate interest rate for Wells Fargo's mortgage claim in Crickmore II, No. 07–01350–5–ATS, at 1. After determining that the current national prime rate (7.5%) was the appropriate interest rate under the formula adopted in Till v. SCS Credit Corp., 541 U.S. 465, 478–79 (2004) (plurality opinion), the court confirmed the debtors' amended plan. Crickmore II, No. 07–01350–5–ATS, at 3–4 (concluding that "the Bankruptcy Code permits the proposed treatment of Wells Fargo's claim . . . .").

RBS Citizens, relying exclusively on Witt, opposes confirmation on the grounds that the proposed treatment of its claim—modification of the contractual interest rate—violates § 1322(b)(2) and is not permitted under § 1322(c)(2). This reliance on Witt, however, is misplaced. After recognizing § 1322(c)(2) was an exception to the anti–modification provision, the Fourth Circuit in Witt held that it "does not permit the bifurcation of an undersecured loan into secured and unsecured claims if the only security for the loan is a lien on the debtor's principal residence." Id. at 513–14 (refusing to recognize that § 1322(c)(2) overruled Nobelman). The chapter 13 plan in Witt proposed to bifurcate the claim of United Companies Lending Corporation ("United"), totaling $22,561.02,

10

into secured and unsecured components. Id. at 509.[7]  In response to United's objection to confirmation of their proposed plan, the debtors asserted "that § 1322(c)(2) should be interpreted to overrule Nobelman and permit bifurcation." Id. at 509.  The Fourth Circuit disagreed and concluded, based on the language of § 1322(c)(2) and its legislative history, that the phrase in the statute—"payment of the claim as modified pursuant to section 1325(a)(5) of this title"—permits modification of the amount or scheduling of the individual payments on a claim secured only by a lien on the debtor's principal residence. Id. (applying the rule of last antecedent, a well–accepted cannon of statutory construction, to resolve the ambiguity in the statute as to whether "as modified" applied to "payment" or "claim.").  The amount or nature of the underlying claim itself, however, could not be bifurcated under § 1322(c)(2). Compare id. at 513–14; with, Am. Gen. Fin., Inc. v. Paschen (In re Paschen), 296 F.3d 1203, 1207 (11th Cir. 2002).[8]  The court, nevertheless, implied that § 1322(c)(2) "serve[s] primarily to 'permit debtors to cure maturing obligations by paying the remaining part of the debt over the life of a Chapter 13 plan.'" Witt, 113 F.3d at 514 (alterations and citations omitted).

---

[7] The secured portion ($13,100) was equal to the fair market value of the debtors' principal residence and would be paid in full over five years plus interest of 10% per annum, whereas the remainder ($9,461.02) would be classified and treated as unsecured. Witt, 113 F.3d at 509–10.

[8] The difference between Witt and Paschen is fundamental.  The Fourth Circuit, in Witt, interpreted § 1322(c)(2) as only allowing modification of the payment terms of a mortgage claim, whereas Paschen held the same provision permits all the modifications of a claim allowed by § 1325(a)(5), including the ability to bifurcate the claim into secured and unsecured portions. See, e.g., Witt, 113 F.3d at 513–14 (holding "that 1322(c)(2) does not permit the bifurcation of an undersecured loan into secured and unsecured claims if the only security for the loan is a lien on the debtor's principal residence."); Paschen, 296 F.3d at 1207 (stating that the phrase "[n]otwithstanding subsection (b)(2)" in § 1322(c)(2) "is a plain statement that subsection (b)(2)'s prohibition on the modification of loans secured only by an interest in a debtor's primary residence does not have any application to the class of claims that fall under § 1322(c)(2).")

Witt has been heavily criticized[9] and courts have limited its application by interpreting it as merely prohibiting "a general expansion of Chapter 13 debtor rights by concluding that Section 1322(c)(2) did not overrule Nobelman[] . . . ." Fed. Nat'l Mortg. Ass'n v. Griffin (In re Griffin), 489 B.R. 638, 642–43 (Bankr. D. Md. 2013). The court in Griffin, after thoroughly examining Witt, concluded that the Fourth Circuit "implied, in both its reasoning and in dicta, that Section 1322(c)(2) should be interpreted as permitting the modification of payment terms even when the debt is due in full—whether by maturity or default—prior to the proposed date of the final payment under the plan." Id. at 642–43 ("In Witt, the essential question presented reduced to whether Section 1322(c)(2) was intended to permit modification of principal residence secured 'claims' in general or just the 'payment of the claim'. Witt limited the subsection's scope to the latter."). In the Fourth Circuit, Nobelman and Witt establish that § 1322(c)(2) may not be used to bifurcate an undersecured claim into secured and unsecured components where its sole security is a lien on the debtor's principal residence. Witt does not, as RBS Citizens' suggests, prevent the debtor from restructuring the interest rate and other payment terms on certain mortgage claims under § 1322(c)(2). See, e.g., Witt, 113 F.3d at 514; Griffin, 489 B.R. at 642–43; accord In re Farooq, No. 09–19564, 2010 WL 348039, at *2 (Bankr. E.D. Va. Jan. 29, 2010) (recognizing that "although

---

[9] Witt has been described as "mak[ing] a mess of several other well–settled provisions of the Code" by "trump[ing] the plain language of the statute with the ambiguous silence of legislative history." In re Tekavec, 476 B.R. 555, 556 n.2 (Bankr. E.D. Wis. 2012) (quoting First Union Mortg. Corp. v. Eubanks (In re Eubanks), 219 B.R. 468, 471 (6th Cir. BAP 1998)); see, e.g., Paschen, 296 F.3d at 1208–09 ("The Witt court's view that the phrase 'as modified' modifies 'payment,' rather than 'claim,' is a grammatically strained reading . . . . [that] contradicts the rule of the last antecedent, an accepted canon of statutory construction . . . ."); In re Mattson, 210 B.R. 157, 160 (Bankr. D. Minn. 1997) (characterizing the Fourth Circuit's interpretation of § 1322(c)(2) in Witt as "unnatural and [violative of] rules of both common sense and grammar, not to mention the last antecedent rule of statutory construction.").

the claim cannot be bifurcated into secured and unsecured components, it can be reamortized and paid over the term of the plan." (citations omitted)).

The court finds, based on the record, that the facts of the instant case compel application of § 1322(c)(2) and allow the debtor to restructure the interest rate on RBS Citizens' claim. The promissory note and deed of trust forming the basis of RBS Citizens' claim will mature on August 1, 2016, which is prior to the due date of the final payment under the fifty–eight month plan.[10] The plan proposes to pay the present value of RBS Citizens' claim, $11,555.70, in fifty–eight equal monthly installments of $226.02. Because the requirements of § 1325(a)(5)(B) are satisfied and the promissory note matured prior to the date of the last scheduled payment under the proposed plan, the interest rate is subject to modification pursuant to § 1322(c)(2).

## CONCLUSION

Based on the foregoing, RBS Citizens' objection is **OVERRULED** and the trustee's motion for confirmation is **ALLOWED**.

### END OF DOCUMENT

---

[10] Additionally, RBS Citizens invoked an acceleration clause in the promissory note and, as a result, it could be argued that the remaining balance thereunder became immediately due and payable approximately one month prior to the petition date.